# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| | Bankr. Case No. 16-11213-CSS |
| CONSTELLATION ENTERPRISES LLC., *et al.*, | (Jointly Administered) |
| Debtors. | |
| | Civ. No. 17-757-RGA |
| OFFICIAL COMMITTEE OF UNSECURED | Civ. No. 17-1430-RGA |
| CREDITORS, | Misc. No. 17-276-RGA |
| Appellant, | |
| v. | |
| CONSTELLATION ENTERPRISES LLC, | |
| OFFICE OF THE UNITED STATES TRUSTEE, | |
| REPRESENTATIVE CLAIMANT, TREVOR | |
| MILLER, DDTL PARTIES, UNITED STATES, | |
| Appellees. | |

## MEMORANDUM

Appellant, the former Official Committee of Unsecured Creditors ("Committee") appointed under 11 U.S.C. § 1102(a)(1) in the chapter 11 cases of Constellation Enterprises LLC and nine related companies ("Debtors"), has appealed the Bankruptcy Court's denial of a settlement approval motion (B.D.I. 963)[1] ("Settlement Denial Order") (Civ. No. 17-757) and the Bankruptcy Court's order granting Debtors' motion to convert their chapter 11 cases to cases under chapter 7 (B.D.I. 1130) ("Conversion Order") (Civ. No. 17-1430). The Committee has also filed a motion for stay of the Conversion Order pending appeal (Misc. No. 17-276) ("Motion to Stay"). Appellees, the United States Trustee ("Trustee") and the DDTL Parties[2]

---

[1] The docket for the Chapter 11 cases, captioned *In re Constellation Enterprises LLC, et al.*, Case No. 16-11213-CSS (Bankr. D. Del.), is cited herein as "B.D.I. __."
[2] The DDTL Parties are the Prepetition Delayed Draw Term Lenders together with the Prepetition Delayed Draw Term Loan Agent. (*See* Civ. No. 17-1430, D.I. 8 at 1).

have each moved to dismiss the appeals. For the reasons set forth below, the Court will dismiss both appeals and will dismiss the Motion to Stay.

I.   **BACKGROUND**

On May 16, 2016, the Debtors filed for relief under chapter 11. Following court-approved sales of substantially all of their assets, the Debtors and the Committee, on September 8, 2016, filed the Joint Motion of the Debtors and Creditors' Committee for an Order Approving Settlement by and Among the Debtors, the Creditors' Committee, the Purchaser and the Ad Hoc Noteholders Group (B.D.I. 560) ("Settlement Motion"). The Settlement Motion sought approval of a "structured dismissal" that included a case-ending mechanism and a settlement agreement to distribute assets to certain creditors. While the motion was pending before the Bankruptcy Court, the Supreme Court issued *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973 (2017), a landmark decision that held that a bankruptcy court cannot approve end-of-case distributions that do not follow ordinary priority rules without the affected creditors' consent. The Committee maintained that its settlement was still permissible under a pre-*Jevic* decision, *ICL Holding Co., Inc.*, 802 F.3d 547 (3d Cir. 2015). In that case, the Third Circuit held that a party that purchased a debtor's assets could pay money to certain creditors to resolve their objections to the sale, even though such payment did not follow normal priority rules. *See ICL*, 802 F.3d at 555-56. The Third Circuit reasoned that while the secured lenders paid cash to resolve sale objections, those funds were not paid at the debtor's direction, were not proceeds from the secured lenders' liens, did not at any time belong to the estate, and would not become part of the estate even as a pass-through. *See id.*

The proposed settlement at issue here was a structured transaction whereby the Debtors transferred assets to their secured creditor in an asset sale, and in turn, the secured creditor would transfer these assets to a settlement trust for distribution to unsecured creditors while skipping

2

creditors of higher priority. The Committee posited that this was permissible because the settlement assets to be distributed to unsecured creditors were not estate property. The Bankruptcy Court rejected that argument, holding that, even if *ICL Holding* survived *Jevic*, the proposed settlement, as a matter of fact, did not fall within the ambit of *ICL Holding*, and thus denied the motion to settle. (*See* Civ. No. 17-757, D.I. 10-1, 5/16/17 Hr'g. Tr. at 246:23-248:15). The Settlement Denial Order was entered on May 16, 2017. (B.D.I. 963). On May 30, 2017, the Committee timely appealed the Settlement Denial Order. (*See* Civ. No. 17-757, D.I. 1). The Debtors did not appeal the Settlement Denial Order, nor did any individual creditor or other party in interest.

On June 23, 2017, the Debtors moved to convert their chapter 11 cases to chapter 7 pursuant to § 1112(a) of the Bankruptcy Code (B.D.I. 1008) ("Conversion Motion"), citing, *inter alia*, the administrative insolvency of the chapter 11 cases. (*Id.* at 4-5; B.D.I. 1126). The Committee urged the Bankruptcy Court to deny the Conversion Motion based on an "equitable analysis of the facts," namely, that the Debtors had agreed to support the Settlement Motion, that conversion would jeopardize the Committee's appeal of the Settlement Denial Order, and that, absent reversal of the Settlement Denial Order, the unsecured creditors stood no chance of recovery on their claims. (*See* B.D.I. 1028 at 1-3, 13-16) (citing *In re Adler*, 329 B.R. 406 (S.D.N.Y. 2005)). The Bankruptcy Court held a hearing on the Conversion Motion on September 27, 2017. (*See* Misc. No. 17-276, D.I. 1-1, 9/27/17 Hr'g. Tr.). The Debtors' Conversion Motion was supported by the Trustee and DDTL Parties. (*See* B.D.I. 1024; 9/27/17 Hr'g. Tr. at 29:15-35:8). The Bankruptcy Court concluded that no evidentiary hearing was necessary and converted the cases to chapter 7, effective October 2, 2017 (B.D.I. 1130) (the "Conversion Order"), based on, *inter alia*, § 1112(a) of the Bankruptcy Code, the Debtors' undisputed eligibility to be debtors under chapter 7, and the "record that has been established

3

over months of this case" regarding administrative insolvency of the cases. (*See* 9/27/17 Hr'g. Tr. at 35:10-39:16). The Committee timely appealed the Conversion Order on October 11, 2017. (B.D.I. 1145). On the same day, the Committee moved for a stay pending appeal in this Court, bypassing the Bankruptcy Court. (Misc. No. 17-276, D.I. 1). No other party appealed the Conversion Order. The Debtors' cases are now in Chapter 7, and the Trustee has appointed a Chapter 7 trustee. (B.D.I. 1143).

The Trustee and the DDTL Parties have moved to dismiss the appeal of the Settlement Denial Order (Civ. No. 17-757, D.I. 43 & 44) and the appeal of the Conversion Order (Civ. No. 17-1430, D.I. 8 & 9) ("Motions to Dismiss"). The merits of the appeal of the Settlement Denial Order are fully briefed. (Civ. No. 17-757, D.I. 25, 33, 38, 42). Merits briefing on the appeal of the Conversion Order was stayed at the request of the parties pending the Court's decision on the Motions to Dismiss. (*See* Civ. No. 17-1430, D.I. 29). The Motions to Dismiss are fully briefed (Civ. No. 17-757, D.I. 43, 44, 45, 48, 49; Civ. No. 17-1430, D.I. 8, 9, 30, 31, 32). On February 9, 2018, the Court held oral argument on the Motions to Dismiss. (*See* Civ. No. 17-757, D.I. 57).

## II. CONTENTIONS

The Trustee and DDTL Parties argue that, immediately upon the conversion of the Chapter 11 cases on October 2, 2017, "the Committee automatically dissolved and ceased to exist." (Civ. No. 17-1430, D.I. 8 at 4). "As mandated by the structure of the Bankruptcy Code, established by case law, and accepted by commentators, the Committee automatically dissolved upon the conversion of Constellation's case to chapter 7." (*Id.*, D.I. 9 at 2). "Accordingly, the Committee had neither the power nor authority to file the Notice of Appeal [of the Conversion

4

Order] on October 11, 2017." (*Id.*, D.I. 8 at 4). "Moreover, as the Committee is now dissolved, it has neither the power nor authority to continue to prosecute the Conversion Appeal." *Id.*[3]

According to the Trustee, the sole appellant has dissolved, and therefore all pending suits, by or against it, must abate. (Civ. No. 17-757, D.I. 44 at 5-6). "The Supreme Court has held that, absent statutory authority providing otherwise, just 'as the death of [a] natural person abates all pending litigation to which such a person is a party, dissolution of a corporation at common law abates all litigation in which the corporation is appearing.'" (*Id.* (quoting *Oklahoma Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 259 (1927)). Similarly, litigation against a government-owned corporation abated once the corporation was dissolved by Congress. (*See id.* at 6 (citing *Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n*, 453 F.3d 1309, 1314 (11th Cir. 2006) (finding "no explicit or implicit expression of Congressional intent to prevent the abatement of any lawsuit filed against [the wholly government owned corporations] prior to their dissolution"). The Trustee cites the Supreme Court's decision in *Oklahoma Natural Gas* as instructive:

> [C]orporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation. The matter is not really procedural or controlled by the rules of the court in which the litigation pends. It concerns the fundamental law of the corporation enacted by the state which brought the corporation into being.

---

[3] The DDTL Parties further argue that the appeal of the Settlement Denial Order must be dismissed on mootness grounds as well. (*See* Civ. No. 17-757, D.I. 43 at 3). According to the DDTL Parties, courts have consistently held that the conversion of a petition from one chapter to another serves to moot an appeal taken from a pre-conversion order. (*See id.* at 5 (citing cases)). Here, the DDTL Parties argue that the appeal is moot because the distribution scheme in the proposed settlement can no longer be effectuated. (*Id.* at 6). "Article III mootness concerns arise when a judicial ruling would have no effect." *Bank of N.Y. Trust Co. v. Official Unsecured Creditors' Comm., (In re Pac. Lumber Co.)*, 584 F.3d 229, 240 (5th Cir. 2009). "If, while an appeal is pending, an event occurs that eliminates the court's ability to provide any effectual relief whatever [sic], the appeal must be dismissed as moot." *Nieters v. Sevcik (In re Rodriguez)*, 258 F.3d 757, 759 (8th Cir. 2002). Because the Court holds that the Committee has automatically dissolved, and there is no co-appellant to prosecute the appeals, the Court does not consider the issue of mootness.

5

*Oklahoma Natural Gas,* 273 U.S. at 259-60. According to the Trustee, there is no reason to treat dissolution of the Committee differently: "Much like a private corporation, a creditors' committee is an artificial entity created by statute, and it can exist only under the express law of the sovereignty by which it was created. After dissolution, there must be some statutory authority for the prolongation of its life for its litigation to continue, whether on its own or by a substituted party. As no statutory authority provides for the continued ability of the Committee to maintain litigation following its dissolution, the appeal must be dismissed." (*Id.* at 6).

The Committee raises several arguments in opposition to the Motions to Dismiss. The Committee argues that the Motions to Dismiss should be denied because they are premised solely upon the Conversion Order, which should be reversed. (Civ. No. 17-276, D.I. 23 at 3). According to the Committee, the Bankruptcy Court erred as a matter of law by declining to conduct an evidentiary hearing on whether conversion was appropriate or justified at that time in the chapter 11 cases. (*See id.* at 3-4; Civ. No. 17-757, D.I. 45 at 17-19). The Committee further argues that, even if Conversion Order was properly entered, no provision of the Bankruptcy Code compels the Committee's dissolution upon conversion. (*See* Civ. No. 17-757, D.I. 45 at 8-16). Finally, even if the Bankruptcy Code mandates the Committee's dissolution post-conversion, the Committee contends that it enacted a bylaw amendment purporting to transfer its rights in the appeal to an ad hoc committee of its former members, which now may pursue the Committee's rights in the appeal. (*See id.* at 22-23).

### III. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over the appeals pursuant to 28 U.S.C. § 158(a). An order converting a case to chapter 7 is a final appealable order. *See In re Fleurantin,* 420 F. App'x 194, 196 (3d Cir. 2011), *citing In re Rosson,* 545 F.3d 764, 770 (9th Cir. 2008) (joining "all other courts of which we are aware that have considered the issue" in holding "that a bankruptcy court

order converting a case from one under another chapter of the Bankruptcy Code to one under Chapter 7 is a final and appealable order") (footnotes omitted). The Settlement Denial Order is also a final order. Under the "merger rule," prior interlocutory orders merge with the final judgment in a case, and are reviewable on appeal. *See Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1253 (3d Cir. 1977) ("the appeal from a final judgment draws in question all prior non-final orders and rulings which produced the judgment"). Consequently, the interlocutory Settlement Denial Order has merged with the final Conversion Order and is now reviewable on appeal. *See id.*

## IV. DISCUSSION

### A. The Committee Automatically Dissolved Upon Conversion

Because the Debtors' chapter 11 cases have now been converted to cases under chapter 7, Appellees argue that the Committee has automatically dissolved, and the appeals must be dismissed. Appellees argue that, upon conversion, the legal entity that was the Committee ceased to exist; therefore, it had no authority to appeal the Conversion Order, and, as the sole appellant of the Settlement Denial Order, no longer has the authority or power to continue its appeal of that order either. (*See* Civ. No. 17-757, D.I. 43 at 4). According to the Trustee, numerous courts and commentators agree that a chapter 11 committee terminates upon conversion to chapter 7. (*Id.*, D.I. 44 at 2-3). Moreover, continued existence post-conversion as proposed by the Committee would raise a host of practical issues not addressed at all by the Bankruptcy Code and Bankruptcy Rules. (*Id.*, D.I. 48 at 6-7). Conversely, the Committee argues that § 348 of the Bankruptcy Code, which governs the effect of conversion, does not provide for the automatic termination of the Committee nor for the loss of its rights. (*Id.*, D.I. 45 at 3, 9). The Committee argues that Bankruptcy Code is silent as to the effect of conversion on the rights and duties of a creditors' committee and that case law has implicitly recognized the

7

right of a committee to continue an appeal post-conversion. (*Id.* at 9-10).

The Court agrees that the legal entity that was the Committee automatically dissolved and ceased to exist as of the conversion of the chapter 11 cases to chapter 7. An official committee of unsecured creditors is created when appointed by the Trustee under § 1102 of the Bankruptcy Code, and it exists only under the framework of chapter 11. Section 103(g) of the Bankruptcy Code provides that, subject to an exception not applicable here, §§ 1101 through 1146 – which include the creditors' committee formation provision in § 1102 and the creditors' committee's powers and duties in § 1103 – "apply *only* in a case under such chapter" – *i.e.*, chapter 11. *See* 11 U.S.C. § 103(g) (emphasis added). Section 1102 does not apply to a case under chapter 7. *See Official Comm. of Unsecured Creditors v. Belgravia Paper Co. (In re Great Northern Paper, Inc.)*, 299 B.R. 1, 5 (D. Me. 2003) ("When the statutory basis of a case is changed, either through dismissal or, as in this case, conversion, 'the statute under which the Committee was created no longer applies and the committee is automatically dissolved.'") (quoting *Unsecured Creditors Comm. of Butler Group, Inc. v. Butler (In re Butler)*, 94 B.R. 433, 436 (Bankr. N.D. Tex. 1989)).

Numerous courts have agreed that upon conversion to chapter 7, the chapter 11 committee of unsecured creditors is terminated. *See In re World Health Alternatives,* 344 B.R. 291, 295 (Bankr. D. Del. 2006) ("[o]f course, upon conversion of the cases to chapter 7, the Committee will cease to exist"); *Creditors' Comm. v. Parks Jaggers (In re Parks Jaggers Aerospace Co.)*, 129 B.R. 265, 268 (M.D. Fla. 1991) ("the committee permanently dissolves when the Chapter 11 proceeding is dismissed or converted to a Chapter 7 action."); *In re Freedlander, Inc. The Mortgage People*, 103 B.R. 752, 758 (Bankr. E.D. Va. 1989) ("conversion to Chapter 7, and the ensuing termination of the Chapter 11 Order for Relief, results in the dissolution of any committee appointed under 11 U.S.C. § 1102 . . ."); *In re Kel-Wood Timber Products Co.*, 88 B.R. 93, 94 (Bankr. E.D. Va. 1988) (same). As the Trustee correctly points

8

out, neither of the leading bankruptcy treatises recognizes the post-conversion existence of a chapter 11 committee. *See* COLLIER ON BANKRUPTCY 3d (16th ed. 2017) §§ 348, 1102, 1103; NORTON BANKR. L. & PRAC. 3d §§ 39:12, 98:21. The Court can see no other result under the structure of the Bankruptcy Code. Once the case is converted to a different chapter, the relevant provisions of the new chapter must govern.

### B. Case Law Does Not Support Post-Conversion Existence of the Committee

The Committee argues that conversion does not mandate its dissolution nor any forfeiture of its rights in the appeal of the Settlement Denial Order. (*See* Civ. No. 17-757, D.I. 45 at 2). The Committee argues it may continue to exist post-conversion, not "to exercise plenary powers" under the Bankruptcy Code, but rather "to exercise vested rights." (*Id.*, D.I. 57, 2/9/18 Hr'g. Tr. at 12:13-18). In support of this argument, the Committee "urges this Court to follow the First Circuit's adjudication of *SPM*" and "adopt a rule that permits a creditors' committee to retain its vested legal and property rights following conversion, and [c]ontinue with an appeal properly perfected prior to the act of conversion." (*Id.*, D.I. 45 at 15-17 (citing *In re SPM Manufacturing Corp.*, 984 F.2d 1305 (1st Cir. 1993)).

In *SPM*, the First Circuit resolved an appeal pursued by a chapter 11 committee post-conversion. Importantly, no party moved to dismiss the appeal based on the conversion of the debtor's case and the dissolution of the committee. *See SPM,* 984 F.2d at 1307-10 (reciting factual and procedural history). Indeed, the issue of whether the creditors' committee in that case had survived the conversion was not raised, argued, or discussed. *See id.* According to the Trustee, the fact that the issue passed *sub silentio* through the First Circuit provides no support for the notion that a creditors' committee survives conversion. The Court agrees with the Trustee. As the court in *Great Northern Paper* recognized, the fact that *SPM* did not address the issue provides no support for the Committee's position: "since the court did not rule in *SPM* on

9

the issue presented here, it is not a precedent favoring either outcome." *Great Northern Paper,* 299 B.R. at 5. The Third Circuit has "previously observed that '[a] drive-by jurisdictional ruling, in which jurisdiction has been assumed by the parties, and assumed without discussion by the court, does not create binding precedent.'" *Goldman v. Citigroup Global Markets Inc.,* 834 F.3d 242, 251 (3d Cir. 2016) (quoting *United States v. Stoerr,* 695 F.3d 271, 277 n.5 (3d Cir. 2012) (internal quotation and editorial marks omitted)). "That understanding comports with similar instruction from the Supreme Court, reaching back to Chief Justice Marshall, who held that there is nothing binding in 'a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio.'" (*Id.* (quoting *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 38 (1952)). As the *SPM* court never considered the issue of the committee's post-conversion existence, this drive-by ruling offers no guidance here.

Aside from *SPM*, the Committee cites only a single case where a chapter 11 creditors' committee survived conversion to chapter 7 under any circumstances, and that was by express order of the Bankruptcy Court pursuant to § 105(a). (*See* Civ. No. 17-1430, D.I. 30 at 4 (citing *In re Lyons Transportation Lines, Inc.,* 162 B.R. 460 (Bankr. W.D. Pa. 1994)). Based on the "considerable expertise that the individual Committee members had with the trucking industry," the bankruptcy court in *Lyons* determined it appropriate and ordered the committee to "remain intact" for several months post-conversion, to provide its views "to the extent desired by the trustee." *See Lyons,* 162 B.R. at 461. The continuation of committee counsel's retention was expressly included under the order, and committee counsel was also "directed by the Court to present the Committee's view on crucial matters in the case." *Id.* Committee counsel subsequently applied for compensation for services rendered post-conversion, and that fee application was opposed on the basis, *inter alia*, that there was no statutory basis to compensate committee counsel from estate funds in a chapter 7 case. *Id.* at 462.

10

At the outset of its analysis, the *Lyons* court observed that "[n]ormally, counsel for a Creditors' Committee ceases all work after the conversion of a Chapter 11 case to a case under Chapter 7 as the conversion results in the dissolution of the Creditors' Committee along with the right of Committee's counsel to compensation for post-conversion services." *Id.* at 462-63. The *Lyons* court ultimately determined that the particular facts of the case, however, including "the complicated issues facing the Trustee and the Court's perceived expertise among the members of the Committee," warranted the continuance of the committee post-conversion. *Id.* at 463. The *Lyons* court determined it had authority under § 105(a) to keep the committee intact, in order to "assist the [chapter 7] Trustee and to assist the Court in its considerations of the various sides of the complex issues involved in the case," "to facilitate administration of the case," and that its exercise of authority was appropriate. *See id.* In effect, the *Lyons* court noted, "committee counsel served post-conversion as special counsel to the Trustee." *Id.* Clearly, the *Lyons* decision is *sui generis*, and must be distinguished from the case at bar, where there is no bankruptcy court order continuing the committee's existence and no assertion of issues so complex that a court or trustee would require post-conversion assistance from industry experts familiar with the case.

In absence of any supporting case law, the Committee argues that, in the "related context" of a committee's existence post-plan confirmation, "courts have mostly agreed that a committee is not dissolved and may continue to function," as § 1103(c)(5) empowers a committee to "perform such other services as are in the interest of those represented." (Civ. No. 17-757, D.I. 45 at 10-11). However, § 103(g) expressly provides that § 1103, and its subsection (c)(5) "catchall provision," apply only to a case in chapter 11. *See* 11 U.S.C. § 103(g). According to the Trustee, the Committee's post-confirmation cases are easily distinguished, as they address a committee's role in cases where a plan of reorganization was confirmed – *i.e.*,

11

successful chapter 11 cases, to which chapter 11 provisions continued to apply. (*See* Civ. No. 17-757, D.I. 48 at 4). The DDTL Parties assert that, contrary to the Committee's arguments, these post-plan confirmation cases do not stand for the proposition that the Committee has "a statutory grant of power to protect its own interests, regardless of time or circumstance, including following conversion of a chapter 11 case to chapter 7." (*Id.*, D.I. 49 at 4). The Court agrees with Appellees. Cases holding that a committee may continue to exist post-plan confirmation in a successful chapter 11 case are simply irrelevant to the issue of whether a creditors' committee may continue to exist post-conversion.[4]

The Court is persuaded by *Great Northern Paper*, a case which directly addressed the same question at issue here: "[w]hat happens to a pending appeal by the Official Committee of Unsecured Creditors when the bankruptcy court converts a chapter 11 proceeding to a chapter 7 proceeding during the appeal?" 299 B.R. at 2. The court held, "When the statutory basis of the case is changed, either through dismissal or, as in this case, conversion, 'the statute under which the Committee was created no longer applies and the committee is automatically dissolved.'" *Id.* at 5 (quoting *Butler*, 94 B.R. at 436). "Courts addressing the issue have consistently ruled that conversion of proceedings from Chapter 11 to Chapter 7 has the same effect on a creditors committee as dismissal of the proceedings." *Id.* (citing *Parks Jaggers*, 129 B.R. at 268).

---

[4] To the extent the Committee's post-confirmation cases address an unsecured creditors' committee's existence post-conversion or post-dismissal, those cases also acknowledge that a committee is dissolved. *See Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC,* 467 F.3d 73, 79-80 (2d Cir. 2006) (recognizing committee's non-party standing to appeal a decision outside of the bankruptcy proceeding but declining to resolve "knotty question of bankruptcy law" as to whether committee had exceeded its statutory authority by initiating proceedings outside of the bankruptcy proceeding); *Parks Jaggers*, 129 B.R. at 267 (holding that "[a]lthough a committee is automatically dissolved at either the dismissal or conversion of a Chapter 11 action," a creditors' committee may continue post-confirmation if there are remaining obligations).

## C. No Party Has Appealed the Conversion Order

According to the Committee, the Motions to Dismiss are based solely on the conversion of the chapter 11 cases, but "[t]he Conversion Order . . . was improperly entered, and should be stayed and then reversed by this Court as a matter of law because of the refusal of the Bankruptcy Court to conduct an evidentiary hearing on whether conversion was appropriate or justified at this time in these cases." (Civ. No. 17-757, D.I. 45 at 4). Because the Committee asserts that the Conversion Order was entered erroneously,[5] the Committee argues that it should be reconstituted and allowed to pursue both appeals. According to the Committee, a holding by this Court that a committee dissolves automatically upon conversion will run afoul of due process and should not be permitted:

> Taken together, the Conversion Order and the relief sought in the Motions to Dismiss would mean that a bankruptcy court can grant a debtor's motion to convert without any opportunity for an opposing party – even an estate fiduciary such as an official committee of unsecured creditors – to be heard or afforded due process. Instead, debtors would have the unilateral ability to divest an official committee of its statutory rights, and all related rights and powers arising under law, including vested appeal rights. Permitting conversion to operate as a dissolution of a committee and the forfeiture of all of its vested rights runs afoul of basic due process and should not be permitted.

(D.I. 45 at 5). The Court does not accept the Committee's "parade of horribles" argument. Any creditor could have appealed the Settlement Denial Order or the Conversion Order. No creditor chose to take on the expense of appealing either order, and they are now time-barred from doing so. 28 U.S.C. § 158(c)(2); FED. R. BANKR. P. 8002(a)(1). The Bankruptcy Code also permits a creditor to intervene in a pending appeal. *See* FED. R. BANKR. P. 8013(g). The appeal of the Settlement Denial Order was docketed June 14, 2017, and the Conversion Motion was filed on June 23, 2017. (B.D.I. 1008). Any creditor could have opposed conversion or sought to intervene in the appeal of the Settlement Denial Order within the time period provided by the

---

[5] The Court does not reach the merits of the appeal of the Conversion Order.

13

Bankruptcy Rule 8013(g),[6] but no creditor did so. The Committee argues that "even if a debtor ordinarily has a right to convert, it was improper for a bankruptcy court to issue an order of conversion where to do so interferes with, or requires dismissal of, a pending appeal." (Misc. No. 17-276, D.I. 23 at 4). As the Trustee points out, the Committee "suggests no limiting principle." (Civ. No. 17-757, D.I. 48 at 7). For this Court to adopt the Committee's position, and hold that a case may never be converted "where to do so would interfere with . . . a pending appeal," would merely introduce another avenue for potential gamesmanship and abuse in the proceedings.

### D. Congress Did Not Authorize the Committee to Transfer Rights or Interests

The Committee argues that, even if this Court finds that conversion resulted in the Committee's dissolution, an "ad hoc committee" of former members, as its successor, may be substituted as the appellant in the appeal of the Settlement Denial Order. (*See* D.I. 45 at 22). This ad hoc committee "has or will be vested with the right of the Committee to maintain this appeal" pursuant to a unilateral bylaw amendment adopted by the Committee prior to the Conversion Order having become effective:

> [i]n the event any court of competent jurisdiction determines that the Committee has ceased to exist, has dissolved or has been divested of its powers or of its ability to pursue the appeal of the decision and order issued on May 16, 2017 by the [Bankruptcy Court] which denied the Joint Motion of the Debtors and Creditors' Committee for an Order Approving Settlement by and among the Ad Hoc Noteholder Group [Doc. No. 560] (the "Appeal"), the Members hereby elect to continue to function as an "ad hoc" committee of unsecured creditors ("Ad Hoc Committee"), in order to protect the interest of the Committee and/or its Members in the Cases and the Appeal and to prosecute the Appeal.
> . . .
> Upon entry of (a) any order converting the Cases to cases under Chapter 7 of the Bankruptcy Code (a "Conversion Order"), and (b) a binding, judicial determination that the Committee has been dissolved, terminated or otherwise rendered incapable of

---

[6] Bankruptcy Rule 8013(g) provides in relevant part: "Unless a statute provides otherwise, an entity that seeks to intervene in an appeal pending in the district court or BAP must move for leave to intervene and serve a copy of the motion on the parties to the appeal. The motion or other notice of intervention authorized by statute must be filed within 30 days after the appeal is docketed." FED. R. BANKR. P. 8013(g).

14

> proceeding with (i) the prosecution of the Appeal, (ii) approval of the settlement subject to the Appeal, or (iii) any matter related thereto, the Committee shall automatically be deemed reconstituted as the Ad Hoc Committee, which reconstitution shall be deemed to have occurred prior to the effective date and time of entry of a Conversion Order, without further action on the part of the Committee.

(*Id.* at 6-7, 22 (citing Article XIV.A-.B, Amended and Restated By-Laws)). The Committee argues that, upon the occurrence of the events set forth above, it was reconstituted as the Ad Hoc Committee and "successor in interest" to the Committee in the appeals. (*Id.* at 22).

The Trustee argues that Federal Rule of Civil Procedure 25(c), which governs the substitution of parties and speaks to the situation in which "an interest is transferred" during the pendency of an action, applies only if "substantive law allows the action to continue" upon dissolution of a party. (*See* Civ. No. 17-757, D.I. 48 at 9-10 (citing 7C Charles Alan Wright & Arthur Miller, FED. PRAC. & PROC. CIV. § 1958 (3d ed. 2007)). There is no provision in the Bankruptcy Code that permits the Committee to hold or transfer rights or interests, nor is there any provision that permits the Committee to transfer its statutory duties to another entity. And there could be no "transfer" here, because the nature of any interests the Committee, as a statutory body and fiduciary, asserted in the appeal of the Settlement Denial Order are of wholly different cloth than personal interests held post-conversion by individual creditors. Only Congress may determine whether there is a successor in interest to a dissolved federal entity. The entity may not on its own name a successor to which it transfers its interests. *See Organic Cow, LLC v. Center for New England Dairy Compact Research*, 335 F.3d 66, 69, 71-72 (2d Cir. 2003) (reversing substitution of parties under Fed. R. Civ. P. 25(c) where federal commission adopted resolution to transfer rights before dissolution, but no federal statute authorized the transfer). Unsurprisingly, the Committee cites no case where a creditors' committee has been permitted to reconstitute itself post-conversion pursuant to its own bylaws.

15

Finally, the Court rejects the Committee's argument that it is "properly viewed as a creature of state law." (Civ. No. 17-757, D.I. 45 at 16). As an entity created and empowered by federal statute to exist solely for the duration of a chapter 11 bankruptcy case in a federal bankruptcy court, the Delaware statutes governing Delaware corporations are clearly inapplicable to the Committee. The question of whether the Committee may litigate post-conversion is solely one of federal law. *See ASEDAC*, 453 F.3d at 1316 (looking to federal statute to determine whether there was successor liability for federal corporation).

## V. CONCLUSION

A creditors' committee exists only under the statutory framework of the Bankruptcy Code. When these cases converted, the chapter 11 order for relief became an order for relief under chapter 7, the statutory predicate for the existence of Committee no longer applied, and the Committee automatically dissolved. As the Committee has dissolved, it has no capacity or authority to appear before this Court, including filing the notice of appeal of the Conversion Order and any filings made in further prosecution of the appeal of the Settlement Denial Order. Because the Committee has no capacity to pursue these appeals, and there is no co-appellant to pursue these appeals, the appeals must be dismissed. Accordingly, the Court dismisses the Motion for Stay Pending Appeal as moot. A separate order shall be entered.

March 22, 2018

Richard G. Andrews
United States District Judge